UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| THOMAS CAFARELLA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:23-cv-11032-IT |
| | * | |
| MASSACHUSETTS INSTITUTE OF | * | |
| TECHNOLOGY, | * | |
| | * | |
| Defendant. | | |

MEMORANDUM & ORDER

November 2, 2023

TALWANI, D.J.

Pending before the court is Defendant Massachusetts Institute of Technology's ("MIT")

Motion to Strike [Doc. No. 10] and Partial Motion to Dismiss ("MTD") [Doc. No. 8] statements

and claims in Plaintiff Thomas Cafarella's Complaint [Doc. No. 1-5]. The Motion to Strike [Doc.

No. 10] and the Partial Motion to Dismiss [Doc. No. 8] are both DENIED for the reasons set

forth herein.

## I.      Factual Background as Alleged in the Complaint

Cafarella was employed by MIT for approximately fourteen years (from September 2007

to February 2022) as the Office Manager of the dental department. Compl. ¶¶ 8, 10, 11 [Doc. No.

1-5]. On February 3, 2022, MIT informed Cafarella that he was being terminated by the

University due to "a lack of work resulting in the elimination of [his] position." Id. ¶ 10. MIT

terminated Cafarella's employment the next day, February 4, 2022. Id. At the time of his

termination, Cafarella believed that there was sufficient work available to justify his position and

was aware of several open positions in his department for which he was qualified but which were

not offered to him. Id. ¶¶ 13-15. One of these positions was filled by someone younger than him

who had held the same job title as he had. Id. ¶ 15. Cafarella had committed no misconduct and had never had disciplinary issues during his fourteen-year term of employment with the institution. Id. ¶ 27.

As of February 4, 2022, MIT had not fully paid Cafarella his earned wages as required by the Massachusetts Wage Act ("Wage Act"). Id. ¶ 17 (citing M.G.L. c. 149 § 148). Cafarella notified MIT and filed a complaint with the Attorney General's Office under the Wage Act and in Cambridge District Court. Id. ¶ 18. Cafarella also contacted MIT and made a demand regarding the Wage Act claim. Id. ¶ 19.

Less than one month after Cafarella was terminated, MIT posted a position that closely mirrored Cafarella's previous position. Id. ¶ 20. After seeing the posted position, Cafarella withdrew his demand regarding the Wage Act claim and notified MIT that he believed he was terminated due to age discrimination. Id. ¶ 21. Cafarella and MIT then discussed the newly posted position and MIT indicated that it did not believe that Cafarella "was suited for the role." Id. ¶ 22. Because of this statement, he did not apply to the posted position. Id.

Cafarella and MIT began negotiations regarding the Wage Act claim and the discrimination claims. Id. ¶ 23. The settlement agreement ultimately fell apart due to MIT's insistence that the agreement specify that "[Cafarella] shall not be entitled to any employment with MIT now or at any time in the future, and he will not apply for employment with MIT at any time in the future." Id. ¶¶ 23, 25. Cafarella refused to sign the agreement if it contained that condition, and the stalemate resulted in the end of settlement negotiations. Id. ¶ 26. Cafarella contends that the only change in circumstances between himself and MIT were the filing of the Wage Act and discrimination claims. Id. ¶ 28.

After the settlement negotiations failed, MIT paid the full amount requested for the Wage Act violation. Id. ¶ 29. Cafarella dismissed his complaint in Cambridge District Court regarding his Wage Act claim and filed a Charge of Discrimination with the Massachusetts Commission Against Discrimination ("MCAD"). Id. ¶¶ 29-31.

In early 2023, a previous colleague notified Cafarella that MIT was going to post a position he was qualified for. Id. ¶¶ 33, 34. While still on the lookout for this position, Cafarella discovered MIT had filled the position before ever posting it. Id. ¶ 35. Cafarella contends that this is the first time this has happened at MIT in fifteen years. Id.

Cafarella subsequently withdrew his MCAD complaint to file in Middlesex Superior Court. Id. ¶ 36.

## II.      Procedural Background

Cafarella's Complaint [Doc. No. 1-5] alleges that MIT retaliated against him for pursuing the Wage Act claim in violation of M.G.L. c. 149, §§ 27C, 148, and 148A (Count I); discriminated against him on the basis of his age in violation of M.G.L. c. 151B and §4(1B)(Count II) and in violation of 29 U.S.C. §§ 621-634 (Count IV); and retaliated against him for complaining about age discrimination in violation of M.G.L. c. 151B, §§ 4(4) and 4(4A) (Count III) and in violation of 29 U.S.C. § 623(d) (Count V). Defendants removed this case on the basis of original jurisdiction over the federal claims and supplemental jurisdiction over the remaining claims. Notice of Removal ¶¶ 4-7 [Doc. No. 1].

MIT has brought a partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) asserting that Cafarella's claims for retaliation fail to state a claim upon which relief can be granted. Def.'s MTD [Doc. No. 8]. Additionally, MIT has moved to strike paragraphs 22-27 of the Complaint. Def.'s Mot. Strike [Doc. No. 10]. MIT argues that these paragraphs discuss

statements made between the parties during the settlement negotiations regarding Cafarella's

Wage Act and age discrimination claims, and are immaterial and impertinent. See Comp. at

¶¶ 22-27 [Doc. No. 1-5]; Mem. Supp. Def.'s Mot. Strike [Doc. No. 11]. Cafarella opposes both

motions. Pl.'s Opp'n to MTD [Doc. No. 15]; Pl.'s Opp'n to Mot. Strike [Doc. No. 16].

### III.    Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth

of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson

v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain

sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp.

v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion

to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to

raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A

claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft

v. Iqbal, 556 U.S. 662, 678 (2009).

Rule 12(f) permits the court to strike "any redundant, immaterial, impertinent, or

scandalous material." Fed. R. Civ. P. 12(f). Statements are immaterial or impertinent when they

are unnecessary or unimportant to the issues in question. Autila v. Mass. Bay Transp. Auth., 342

F.R.D. 23, 31 (D. Mass. 2022). As relevant here, "[o]ne test that has been advanced for

determining whether an allegation in a pleading is immaterial and impertinent within the

meaning of Rule 12(f) is whether proof concerning it could be received at trial." Wright &

Miller, Federal Practice and Procedure, Civil 3d § 1382 (2004).

## IV.    Discussion

### A.    *Motion to Strike*

MIT argues that paragraphs 22-27 of the <u>Complaint</u> [Doc. 1-5] are impermissible and should be struck from the record because they would be inadmissible under Rule 408 of the Federal Rules of Evidence. <u>See</u> Mem. Supp. Def.'s Mot. Strike 3-4 [Doc. No. 11]. "Rule 408 prohibits the introduction of settlement offers or statements made during settlement negotiations 'to prove or disprove the validity or amount' of that claim at a later date. However, such evidence is admissible for purposes other than to establish the claim's validity or amount." <u>Moreta v. First Transit of P.R., Inc.</u>, 39 F. Supp. 3d 169, 176 (D.P.R. 2014) (citing Fed. R. Evid. 408). The Rule is "'inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions.'" <u>Id.</u> (citing <u>Scott v. Goodman</u>, 961 F. Supp. 424, 437 (E.D.N.Y. 1997). "And a settlement offer may be used to show 'an independent violation ... unrelated to the underlying claim which was the subject of the correspondence.'" <u>Id.</u> (citing <u>Carney v. Am. Univ.</u>, 151 F.3d 1090, 1095 (D.C. Cir. 1998). Furthermore, motions to strike are generally disfavored in practice, as they are a drastic remedy. <u>Alston v. Town of Brookline, Mass.</u>, 321 F.R.D. 41, 43 (D. Mass. 2017) (citing <u>Manning v. Bos. Med. Ctr. Corp.</u>, 725 F.3d 34, 59 (1st Cir. 2013)).

Plaintiff concedes that Paragraphs 22-27 of the Complaint "include settlement communications or information gathered in settlement communications." Pl.'s Opp'n to Mot. Strike [Doc. No. 16]. While the statements would not be admissible to substantiate Plaintiff's wage act and age discrimination claim, they may be relevant to showing an independent violation, namely Plaintiff's claims of a retaliatory failure to hire. <u>See</u> <u>Moreta</u>, 39 F. Supp. 3d at 176. FRE 408 would therefore not necessarily serve as a bar to the admissibility of these

statements. And MIT has offered no additional reason to strike these paragraphs outside of that Rule. Consequently, the court finds no basis to strike Paragraphs 22-27.

      B.    *Motion to Dismiss*

Counts I, III, and V of the Complaint assert that MIT retaliated against Cafarella for his Wage Act complaint (Count I) and/or his federal and state age discrimination complaints (Counts III and V). See Compl. 4,5,7 [Doc. No. 1-5]. MIT argues that all three of these claims should be dismissed for failure to state a claim. See Def.'s Mem. in Supp. of Partial MTD 1 [Doc. No. 9].

For all three retaliatory claims, Cafarella must make a *prima facia* showing that (1) he engaged in protected conduct; (2) he was subjected to an adverse action; and (3) a causal connection exists between the protected conduct and the adverse action. See Tombeno v. FedEx Corp. Servs., Inc., 284 F. Supp. 3d 80, 90 (D. Mass. 2018). This *prima facia* showing is identical for Count I (Wage Act), Count III (M.G.L. c. 151B), and Count V (Age Discrimination in Employment ("ADEA")). See Tombeno, 284 F. Supp. 3d at 90 *(prima facia* showing for ADEA and M.G.L.c.151B); see also Figueroa v. Cactus Mexican Grill LLC, 575 F. Supp. 3d 208, 217 (D. Mass. 2021) (*prima facia* showing for Wage Act). MIT argues that Cafarella has not alleged sufficient facts to support a finding of either an adverse action or a causal connection between that action and any protected conduct. See Def.'s Mem. in Supp. of Partial MTD 4-6 [Doc. No. 9].

It is undisputed that Cafarella has alleged he engaged in protected activity under the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623; the state discrimination act, M.G.L. c. 151B; and the state Wage Act, M.G.L. c. 149 § 148. See Tian v. Aspen Tech., Inc., 53 F. Supp. 3d 345, 369 (D. Mass. 2014); Fantini v. Salem State Coll., 557 F.3d 22, 35-36 (1st Cir. 2009). Thus, the court proceeds to the second two prongs of the analysis.

1.      Adverse Employment Action

An "adverse employment action" occurs when the action is "substantial enough to have materially disadvantaged [the] employee." <u>Psy-Ed Corp. v. Klein</u>, 459 Mass. 697, 707, 947 N.E.2d 520 (Mass. 2011). Employees have been materially disadvantaged "when objective aspects of the work environment are affected." <u>Yee v. Mass. State Police</u>, 481 Mass. 290, 297 121 N.E.3d 155 (Mass. 2019). "Aspects of the work environment" may extend past the traditional boundaries of the workplace. <u>E.g.</u>, <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 63 (2006); <u>Soni v. Wespiser</u>, 239 F. Supp. 3d 373, 383 (D. Mass. 2017) (finding references to be a protected privilege of employment). Therefore, retaliation claimants need not be current employees when the adverse employment action occurs. <u>Psy-Ed Corp.</u>, 459 Mass. at 708 n.26.

Moreover, in the retaliation context, the court's concern is to ensure that employers do not act in such a way as to dissuade employees from filing complaints. <u>See</u> <u>Burlington N. & Santa Fe Ry. Co.</u>, 548 U.S. at 68. Accordingly, an "adverse employment action" for purposes of a retaliation claim, is one where "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" <u>Id.</u> (quoting <u>Rochon v. Gonzales</u>, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). Adverse employment actions are analyzed through the eyes of a "reasonable employee." <u>Id.</u>

Massachusetts state courts and federal courts have recognized that adverse employment actions include discriminatory or retaliatory decisions not to rehire. <u>Ciccarelli v. Sch. Dep't of Lowell</u>, 70 Mass. App. Ct 787, 792, 877 N.E.2d 609 (Mass. App. Ct. 2007); <u>Velez v. Janssen Ortho, LLC</u>, 467 F.3d 802, 807 (1st Cir. 2006).

To allege an adverse hiring decision under federal law, a plaintiff must generally show that: (1) the plaintiff applied for a vacant position that (2) they were qualified for and (3) they failed to be hired for that position. Velez, 467 F.3d at 807. The First Circuit has emphasized that generally, "in the absence of a job application, there cannot be a failure-to-hire." Id. The First Circuit has recognized, however, that there could be exceptions to this rule where "the facts of a particular case make an allegation of a specific application a quixotic requirement." Id. at 808 n.6 (internal citations and quotations omitted); accord Shervin v. Partners Healthcare Sys., Inc., 804 F.3d 23, 50 (1st Cir. 2015).

Massachusetts common law appears to recognize a broader category of retaliatory actions. In particular, state courts have found that adverse employment action exists when someone with power over the hiring decision indicates to the employee seeking employment that they will not be hired. See Ciccarelli, 70 Mass. App. Ct at 789-790 (employer told teacher up for rehire there was "no possibility of [her] coming back" and "[h]ow can I rehire you, can you answer that?"). Unlike the federal courts, state courts have not articulated hard-and-fast requirements that the job position be posted, and that the plaintiff apply for it, in order for the failure to hire to qualify as an adverse employment action.

Cafarella did not apply for a vacant position. With regard to the position posted in March 2022, Cafarella alleges that he discussed the position with MIT but did not apply after MIT "made it clear it did not believe [Cafarella] was suited for the role." Compl. ¶ 22 [Doc. No. 1-5]. Cafarella also contends that MIT changed its long-standing posting practice when it filled a position he was qualified for without posting it. Id. ¶ 35. While neither of these circumstances fits squarely in the general framework, the court finds the allegations sufficient to survive a motion to dismiss here where Plaintiff claims that MIT knew he was interested in a position,

8

discouraged him from applying to one position and then changed its usual practice to not post the other.[1]

### 2.   Causal Connection

Retaliation claims require a plausible finding of causation to survive a motion to dismiss. "Establishing a prima facie case isn't usually a tough sell." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 88 (1st Cir. 2018) (citing Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2013). And "temporal proximity alone can suffice to 'meet the relatively light burden of establishing a prima facie case of retaliation.'" DeCaire v. Mukasey, 530 F.3d 1, 19 (1st Cir. 2008) (quoting Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 224 (1st Cir. 2007)). However, the claim requires "that the decisionmaker knew of the plaintiff's protected conduct when he or she decided to take the adverse employment action." Pomales v. Celulares Telefonica, Inc., 447 F.3d 79, 85 (1st Cir. 2006).

Here, Cafarella alleges that he filed a Wage Act claim after he was terminated in early February. Compl. ¶ 18 [Doc. No. 1-5]. In early March, Cafarella withdrew his Wage Act claim, but notified MIT that he believed his termination was a result of age discrimination. Id. ¶¶ 20-21. After he took those actions, Cafarella was informed that he was not suitable for the open position of "Project Manager." Id. ¶ 22. Cafarella's Wage Act claim and age discrimination notification were "[t]he only change in circumstances" that occurred between him and MIT in that time period. Id. ¶ 28. As a result, Cafarella has sufficiently alleged that MIT was aware of his claims

---

[1] MIT's insistence in settlement negotiations that Cafarella agreed not to seek future employment with MIT does not itself constitute an adverse employment action where Cafarella has no right to a settlement with MIT. See Moore v. U.S. Dep't of State, 351 F. Supp. 3d 76, 95 (D.D.C. 2019) (abandonment of settlement agreement "does not qualify as a materially adverse action"). Whether the settlement demand is relevant to his claim that he was not hired into the positions discussed will turn on whether MIT had a non-retaliatory reason for that demand.

when it discouraged him from applying to the "Project Manager" position and chose not to post

the other position for which Cafarella could have applied. See DeCaire, 530 F.3d at 19 (causation

based on temporal proximity exists where alleged retaliation occurred a year after protected

activity).

**V.      Conclusion**

     For the foregoing reasons, Defendant's Motion to Strike [Doc. No. 10] and Partial

Motion to Dismiss [Doc. No. 8] are DENIED.

     IT IS SO ORDERED

November 2, 2023                                    /s/       Indira Talwani
                                                              United States District Judge