# EXHIBIT 3

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS CAFARELLA,<br><br>           Plaintiff,<br><br>v.<br><br>MASSACHUSETTS INSTITUTE<br>OF TECHNOLOGY,<br><br>           Defendant. | Civil Action No. 1:23-cv-11032 |

## DECLARATION OF CATHERINE TETREAULT

I, Catherine Tetreault, depose and state upon personal knowledge the following:

1. I was employed as the Director of Human Resources ("HR Director") for MIT Health, a full ambulatory care center that provides medical and dental services to students, faculty, staff and their families at the Massachusetts Institute of Technology, from March 2017 until October 2022.

2. While I was employed at MIT Health, it was known as "MIT Medical."

3. At all times during my employment, MIT Health had a practice group that provided dental services; the remaining practice groups within MIT Health (for example, urgent care, pediatrics, etc.) provided other clinical health services.

4. When I began working at MIT Health, the Plaintiff held the role of "Administrative Coordinator" in the dental practice.

5. When I began working at MIT Health it became clear that across the entire organization there were opportunities to improve operational efficiency and service levels across practice areas.

6. One of my primary priorities beginning in 2018 was working with MIT Health leadership and management to develop ways to improve performance and efficiency within the various practice groups, implement best practices and conform to industry standards.

7. As part of this effort, in or about June 2018, MIT Health implemented a new and better electronic health records system.

8. The introduction of the new electronic health records system resulted in a reorganization within MIT Health in or about November, 2018.

9. In reviewing its processes, MIT Health also identified an issue with clinicians reporting into non-clinicians.

10. Prior to the reorganization, both non-clinicians and clinicians (*e.g,* medical assistants and dental assistants) reported to a non-clinical administrative manager. In the dental practice, the administrative manager was Plaintiff and for the medical practice groups, the administrative manager was Phyllis Winn, Administrative Coordinator.

11. While neither Plaintiff nor Ms. Winn was a clinician, both had supervisory authority over clinicians and non-clinicians alike.

12. Recognizing the importance of having a clinical manager, as opposed to a non-clinical manager, supervising the clinical staff, MIT Health created a new, clinical Practice Manager role to oversee the clinicians.

13. MIT Health hired a clinician, *i.e.*, a Registered Nurse, to become a new Practice Manager for the medical practice groups. The new Practice Manager's position assumed many of the duties and responsibilities of Ms. Winn's position of Administrative Coordinator.

14. At that time, MIT Health was attempting to avoid layoffs and therefore created a new position called Special Projects Officer ("SPO") to which it transferred Ms. Winn. As a

SPO, Ms. Winn reported to senior management within MIT Health; the position was expected to develop over time to assist MIT Health leadership to implement workflows, training, system upgrades and/or other tasks and projects, according to business needs.

15. After the reorganization, Ms. Winn worked to become a systems super user, trainer and administrative electronic medical records expert for the new electronic medical records system within MIT Heath, and her SPO role grew into a systems analyst position. Because of the way in which her SPO role evolved, in or around early 2022, Ms. Winn was given a new job title and reassigned to report into IT; her job duties did not change and she was not transferred into an open position.

16. Although the dental practice maintained its dental specific electronic medical records systems, as opposed to the new electronics medical records system that was implemented throughout the rest of MIT Health, the dental practice was included in the 2018 reorganization.

17. In order to ensure clinical staff were reporting to a clinician within the dental practice, MIT Health created a new clinical Dental Practice Manager's role to oversee the day-to-day operations of the dental practice, including overseeing clinicians, and promoted Kathleen Sullivan ("Ms. Sullivan"), a dental hygienist, into the position on January 7, 2019.

18. Like the new Practice Manager's position within MIT Health, the dental Practice Manager's position assumed many of the duties and responsibilities of Plaintiff's position of Administrative Coordinator.

19. Again, wanting to avoid layoffs at the time, MIT Health moved Plaintiff into a newly created SPO role within the dental practice, with the understanding that the role, like Ms. Winn's SPO role, would develop over time and would be a role that the department leadership

and/or the dental Practice Manager could rely on to implement workflows, training, system upgrades and other tasks, according to business needs.

20. Plaintiff's SPO role did not evolve in the same way as Ms. Winn's role did. The nature and volume of the work in the dental practice was different than the medical practice groups, primarily because the dental practice used a well-established medical records system, Dentrix, making it easy for work associated with systems upgrades or other adjustments to be folded into the day-to-day activities of others within the dental practice, including the front desk staff (patient service representatives) and the dental Practice Manager.

21. The dental practice did not have much complex project work or the need for an employee devoted to special projects.

22. Ms. Sullivan informed me that as the SPO Plaintiff was not productive during the workday, it was unclear exactly what he did all day, and there was seemingly not enough work to justify his full-time schedule. In light of Ms. Sullivan's concerns, I coached her to have Plaintiff write down his tasks so that she would be able to understand how he spent his time at work.

23. I learned from Dr. Cecilia Stuopis, Director of MIT Health, that she also frequently observed Plaintiff being unproductive during the workday.

24. In the years following the 2018 reorganizations, MIT Health undertook an evaluation of all health care services, including administrative services, in an effort to increase fiscal responsibility by, among other things, eliminating positions due to a lack of work.

25. As a result, Plaintiff's SPO role was eliminated, along with a number of other roles over several years.

26. MIT notified Plaintiff of his layoff on February 3, 2022, and, pursuant to MIT policy, he was provided with a layoff notice period of 5 months but, as permitted by the policy,

was relieved of the obligation to work during his notice period because there was no work associated with his role.

27. B.S., a graphic designer who was laid off from MIT Health on the same day as Plaintiff, was provided a layoff notice period of 3 months, and was also relieved of his obligation to work during his notice period because there was no work associated with his role.

28. I was present for the conversation during which Plaintiff was notified of his layoff.

29. When Plaintiff was informed of his position elimination and layoff, he appeared upset and angry.

Signed under the pains and penalties of perjury this <u>2nd</u> day of December, 2024.

                                                    *Cathi Tetreault*
                                           Cathi Tetreault (Dec 2, 2024 12:34 EST)
                                              Catherine Tetreault